# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TEXAS

# TYLER DIVISION

| | | |
|---|---|---|
| **LONESTAR INVENTIONS, L.P.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 6:10-CV-588-** |
| | § | **LED-JDL** |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SONY ELECTRONICS INC.** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Sony Electronics Inc.'s ("Sony") Motion to Transfer Venue (Doc. No. 22). The matter has been fully briefed. (Doc Nos. 28, 30, & 35). Having considered the parties' arguments, the Court **DENIES** Sony's motion.

## BACKGROUND

Lonestar Inventions, LP ("Lonestar") is a Texas Limited Partnership with its principal place of business in Austin, Texas. EXS. A-B TO DECLARATION OF JEFFREY MILLER ("MILLER DECL.") (DOC. NOS. 22-2 & 22-3), ("Certificate of Limited Partnership"). Lonestar has one General Partner, Lonestar Inventions Management, LLC ("LIM") that is managed by Osmand Ersed Akcasu, the named inventor of the patent in suit, and Gerald Tallinger. EX. D TO MILLER DECL. (DOC. NO. 22-5); COMPLAINT (DOC. NO. 1), AT ¶ 8. Akcasu resides in Morgan Hill, CA and Tallinger resides in Austin, Texas. *Id;* EXS. F,H. TO MILLER DECL. (DOC. NOS. 22-7 & 22-9). Most of Lonestar's relevant documents can be found with Lonestar's counsel in Austin, TX. RESPONSE, AT 5.

1

Sony is a Delaware corporation with its principal place of business in San Diego, California. ANSWER (DOC. NO. 20), AT ¶ 2. Sony claims that the alleged infringing product was "designed and implemented by" Cadence Design Systems, Inc. ("Cadence"). MOTION, AT 3-4. As a result, Sony claims that it has "virtually no knowledge" of the infringing product. *Id.* Cadence is a Delaware corporation with its principal place of business San Jose, California. EX. G TO MILLER DECL. (DOC. NO. 22-8)("CADENCE COMPLAINT"), AT ¶ 1. Sony claims that Cadence has agreed to indemnify Sony in accordance with the terms of the design system contract. *Id.*; MILLER DECL., AT ¶ 14. Sony also asserts that it "expects that virtually all of the electronic documents likely to be produced in this action will be collected through Cadence." MILLER DECL., AT ¶ 14; MOTION AT 6. Sony further expects that these documents will be collected at Cadence's San Jose Office. *Id.*

Lonestar filed this suit against Sony alleging infringement of U.S. Patent No. 5,208,725 ("the '725 Patent") on November 5, 2010. *See* COMPLAINT. On February 15, 2011, Cadence filed suit in the Northern District of California naming OEA International, Inc. ("OEA") and Lonestar as defendants. *See* CADENCE COMPLAINT. Cadence's California action alleges that OEA's software products infringe five of Cadence's patents. *Id.* In addition to the five infringement counts against OEA's software, Cadence also included a declaratory judgment claim that the Sony CXD2819R does not infringe Lonestar's '725 patent. *Id.* at 6-8. Sony argues that despite the fact that it is headquartered in San Diego, the presence of third-party Cadence and the declaratory judgment action warrants transfer to the Northern District of California.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where

it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

**DISCUSSION**

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer

is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular established place of business." 28 U.S.C. § 1400(b). In this case, Lonestar does not contest that Sony conducts business within the Northern District of California and transfer is permissible under § 1404. *See* COMPLAINT, AT ¶1; ANSWER, AT ¶20. Although the action could have been brought in the Northern District of California, Sony has not established that the Northern District of California is "clearly more convenient."

I.      **The Private Interest Factors**

        *(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *Genentech*, 566 F.3d at 1345. As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp. 2d 325, 330 (E.D.N.Y. 2006)).

Sony claims that it has no knowledge of any of the infringing activity and evidence related to the production and design of the chip is in the hands of a third-party, Cadence. MOTION, AT 3. As a result, Sony "expects" that "virtually all" of the relevant documents will be produced through the third-party Cadence and that all discovery materials related to Cadence, no matter where they originated, will pass through Cadence's San Jose headquarters. REPLY, AT 3; MILLER DECL., AT ¶ 15. To the extent that Sony has knowledge of the infringing activity, any evidence would be located

in either California or Japan. DECLARATION OF JAIME SIEGAL (DOC. NO. 30-3) ("SIEGAL DECL."), AT ¶ 6. According to Senior IP Counsel for the Sony Corporation of America, Sony Electronics' (the named party) San Diego facilities include a "center for product design, development and manufacturing for Sony's electronic products," which may contain relevant information. *Id.* Additionally, Sony argues that the firm that prosecuted the patent, the current attorney-agents for the patent in-suit, the inventor, and Cadence's headquarters are in the Northern District of California. EXS. H-J, L TO MILLER DECL. (DOC. NOS. 22-9, 22-10, 22-11, 22-13). Lonestar, in turn, argues that its relevant documents have already been collected and are located in Austin, Texas.

The Court is not persuaded that there is a greater ease of access to sources of proof in the Northern District of California. In *Genentech*, the Federal Circuit found that the "bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. In finding that this factor weighed in favor of transfer, the Federal Circuit noted that Genentech informed the court that all of the relevant documents were located at its headquarters, in the proposed transferee venue. *Id.* In this case, however, the accused infringer has not identified any evidence concerning the location of documents and witnesses other than to assert that it "expects" that all relevant documents will be produced by a third-party indemnitor, Cadence. But any knowledge of the alleged infringing product Sony does have would be located in either Japan or California, presumably at Sony's San Diego facility. SIEGAL DECL., ¶ at 6.

Sony further "anticipate[s]" that Cadence will collect and assemble all relevant documents at its San Jose office, regardless of where the documents are currently located. REPLY, AT 3; MILLER DECL., AT ¶ 16. As Lonestar notes, because Cadence performs engineering and design work throughout the world including India, Israel Korea, and Russia, the relevant documents could be

5

anywhere. Sony's expectations do little to persuade the Court that the Northern District of California is clearly more convenient. Moreover, Lonestar has identified Austin, Texas as the current location of its sources of proof which is significantly closer to Tyler, TX than San Jose, CA. In sum, given that Sony bears the burden of proof, the substantial uncertainty regarding the current location of sources of proof and Sony's failure to dispel that uncertainty weighs against transfer to the Northern District of California.

(b)*The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

This factor weighs heavily for transfer if the majority of non-party witnesses are located within the Northern District of California. *See Volkswagen II*, 545 F.3d at 316; *see also In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (stating that the venue where potentially relevant witnesss are located weighs in favor of that venue). Sony argues that the firm that prosecuted the patent, the current attorney-agents for the patent in-suit, and the inventor are in the Northern District of California. MOTION, AT 5; EXS. H-J, L TO MILLER DECL. (DOC. NOS. 22-9, 22-10, 22-11, 22-13). Moreover, Sony contends that because Cadence is headquartered in the Northern District of California, this is where "Cadence would likely produce documents and many potential witnesses reside (the alternative being in Maryland, where some development work is performed.)" MOTION, AT 7 (citing MILLER DECL., at ¶¶ 16-17).

Tallinger, one of LIM's two officers, resides in Austin, TX outside of the Eastern District of Texas. LIM's other officer, Akcasu, is also the named inventor of the patent in suit and resides in the Northern District of California. Although some non-party witnesses *may* reside in the Northern District of California, Sony admits that witnesses may be located in Maryland where additional development work is performed. Additionally, Sony has not identified any of its or Cadence's

employees in particular. Because of the speculative nature of these assertions and Sony's failure to identify specific potential witnesses other than patent prosecution counsel, the Court weighs this factor only slightly in favor of transfer. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at \*6 (E.D.Tex Dec. 6, 2010)(stating that the Court will not base its conclusion on unidentified witnesses).

### (c) The Cost of Attendance for Willing Witnesses

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

Sony employees responsible for the technology at issue reside in California or Japan and the prosecuting attorneys reside in the Northern District of California. Moreover, Akcasu, the named inventor, resides in the Northern District of California. The witnesses traveling from California would have to travel between 1400 and 1700 miles to reach the Eastern District whereas Tallinger would have to travel 235 miles from Austin to Tyler. However, this factor is neutral with regards to Cadence because the unidentified Cadence witnesses could reside in California, Maryland, or in proximity to any of Cadence's other facilities. In sum, this factor weighs in favor of transfer.

### (d) Other Practical Problems

Although judicial economy is not among the list of the enumerated factors, it is "a paramount

consideration when determining whether a transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351. The parties raise two issues implicating judicial economy: (1) this Court's familiarity with the patent in suit and (2) the existence of a later-filed declaratory judgment involving third-party Cadence pending in the Northern District of California.

### (i) Familiarity with Patent in Suit

This Court is intimately familiar with the sole patent in suit for two reasons. *See In re Vistaprint Limited*, 628 F.3d 1342,1346 (Fed. Cir. 2010)("[T]he gain in judicial economy from keeping this case in the Eastern District of Texas is more than negligible."). First, Lonestar has filed no less than eight actions in this district over the last four years involving the patent in suit. Second, this Court invested a considerable amount of time analyzing the patent including holding a *Markman* hearing for three cases involving the patent in suit and issuing a lengthy *Markman* Order in April 2009 that construed 15 terms found in 10 of the patents' 12 claims including the patent's only independent claim.

Sony argues that this case is analogous to *Verizon*, where the Federal Circuit granted mandamus in a venue dispute involving a patent that the Eastern District previously construed five years prior to the suit at issue. *In re Verizon Business Network Services Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011). In *Verizon*, the Federal Circuit found that the district court "would have to relearn a considerable amount based on the [five year] lapse in time between the two suits and would likely have to familiarize itself with reexamination materials that were not part of the previous suit." *Id*. In this case, however, the Court issued a claim construction order 19 months before the instant action was filed and there has been no intervening reexamination decision to discount this Court's considerable experience with the patent in suit. As this court concluded in *ColorQuick v.*

*Vistraprint*, "The parties and the judiciary would benefit from the Court's familiarity with the patent-in-suit, which would require a substantial investment of time, energy and money to replicate. Accordingly, gains in judicial economy derived from the Court's prior experience with the patent-in-suit weighs against transfer." *ColorQuick, LLC v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *7 (E.D.Tex. Jul. 22, 2010), *aff'd,* 628 F.3d 1342 (Fed. Cir. 2010).

### *(ii) Cadence's Declaratory Judgment Action*

Sony further argues that transfer to the Northern District of California will promote judicial economy because of a pending suit by Cadence against OEA and Lonestar. Sony argues that even though the California action was filed three months after the instant case, the customer suit exception should apply and the case should be transferred to the Northern District of California.

"The customer suit exception is an exception to the general rule that favors the forum of the first filed action." *Tegic Commc'n Corp. v. Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). In general, "litigation against or brought by the manufacture of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (citations omitted); *see also Microsoft Corp. v. Commonwealth Scientific and Indus. research Org.*, Nos. 6:06-CV-549, 6:06-CV-550, 2007 WL 4376104, at *2 (E.D.Tex. Dec. 13, 2007). The exception is rooted in the presumption "that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464 (citations omitted). Moreover, the exception "also acknowledges that a patentee's election to sue customers, rather than the manufacturer itself, is often based on a desire to intimidate smaller

businesses." *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554, 557 (D.Del. 2003)(citing *Kahn v. General Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).

In determining whether to apply the customer-suit exception, the courts apply the guiding principles of efficiency and judicial economy. *Tegic Commc'n Corp.*, 458 F.3d at 1343. Moreover, Federal Circuit precedent identifies three factors relevant to determining whether to apply the customer-suit exception: "(1)whether the customer defendant in the earlier-filed case is merely a reseller; (2)whether the customer-defendant agrees to be bound by any decision in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *Card Activation Technologies v. Pier 1 Imports, Inc.*, No. 09-C-2021, 2009 WL 295626, at *3 (N.D. Ill. Sept. 14, 2009) (citing *Tegic Commc'n Corp.*, 458 F.3d at 1343); *see also Kahn*, 889 F.2d at 1082; *Katz*, 909 F.2d at 1464.

Yet again, the Court is asked to make factual determinations regarding Cadence's role in the manufacture of the alleged infringing product based on minimal conclusory filings. The Court has only Sony's bald assertions that Cadence "designed, verified, and implemented the relevant circuitry for Sony to incorporate into the accused device" or that Cadence "designed" the accused product. MOTION, AT 3-4 (citing MILLER DECL., AT ¶14); SIEGLAR DECL., AT ¶ 11. Moreover, this is not a situation where plaintiff is attempting to intimidate a smaller business. With that in mind, the Court turns to the factors outlined above.

First, Sony has not provided sufficient evidence from which the Court can conclude that Sony is a "mere reseller" of the accused infringing product. While Sony asserts that Cadence "designed and implemented the relevant circuitry," there is a conspicuous lack of explanation in Sony's filings

of what that entails.  The Court will not make assumptions of Sony's involvement or lack thereof in the design or manufacture of the infringing product.  This is particularly true in light of the fact that Sony has no response to the allegation that "Sony" and not "Cadence" appears on the face of physical chip.  RESPONSE, AT 10 (citing EX. H TO RESPONSE DOC. NO. 22-9).

Similarly, absent more concrete information regarding the details of the indemnification agreement and  Sony's involvement in the manufacture of the alleged infringing chip, this Court cannot conclude that the remaining factors support applying the customer-suit exception. *See Kahn*, 889 F.2d at 1082 (declining to apply the customer-suit exception where the alleged reseller was not a party to the later filed declaratory judgment action and there was uncertainty regarding whether there were other sources of the infringing product).

With an eye towards promoting efficiency and judicial economy, the Court declines to apply the customer-suit exception.  The Court is not persuaded that the interests of justice would be served by negating a plaintiff's chosen, first filed venue due to a third party including the patent in suit in a seemingly unrelated later filed action.  This conclusion is bolstered by the speculative nature, outlined above, of Cadence and Sony's role in the development and manufacture of the allegedly infringing component.  Additionally, given this Court's extensive involvement with the patent in suit, the Court finds that judicial economy would not be served by requiring the California court to learn the patent.

## II.    The Public Interest Factors

### (a) The Administrative Difficulties Flowing From Court Congestion

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566

F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* This case is set for trial in April 2013, about 20 months away. The parties cite to competing statistics and ask the court to compare the *median* time to disposition for all civil cases making it to trial (25.5 months in N.D. Cal vs. 24.2 months in E.D. Tex.) with the *average* time to trial for patent cases (36.9 months in N.D. Cal. vs. 27.1 months in E.D. Tex.). MOTION, AT 9; RESPONSE, AT 3. The use of different statistical valuations only underscores the speculative nature of this factor. Nonetheless, it appears that in patent cases, the average time to reach trial is significantly shorter in the Eastern District of Texas. As a result, this factor weighs against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

The Northern District of California has no more interest in this case than the Eastern District of Texas. While Sony is headquartered in the Southern District of California and that district may have a strong local interest because of the location of Sony's employees, Sony seeks transfer to the Northern District of California where Cadence is located. Sony's connections to the Northern District of California are too speculative to weigh in favor of transfer because of the cloud of uncertainty surrounding the level of involvement between Sony and Cadence regarding the design and manufacture of the allegedly infringing product. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). The Court recognizes that Akcasu's residence in the Northern District of California and his role as the named inventor gives that district some local interest. This interest, however, is mitigated by Akcasu's management role for Lonestar, a corporation incorporated under the laws of Texas and headquartered in Austin, TX. Although the Eastern

12

District of Texas does not appear have a strong interest in the resolution of the case, Lonestar has been incorporated in the state of Texas for over seven years. In sum, Sony's tenuous ties to the Northern District of California renders this factor neutral.

*(c) The Remaining Public interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

For the foregoing reasons, Sony has failed to meet its burden of showing that the Northern District of California is clearly more convenient. Although the availability of compulsory process and the cost of attendance of willing witnesses weigh slightly in favor of transfer, the uncertainty regarding access to the sources of proof, the judicial resources this Court has spent interpreting the patent in suit, and a slightly faster patent docket weigh against transfer. Moreover, the Court is not persuaded that Cadence's declaratory judgment action included in its infringement suit against OEA should negate Lonestar's choice of venue. This is particularly true where the relationship between Cadence, Sony, and the infringing product is as ambiguous as it is here. Accordingly, the factors do not favor transfer and the Court **DENIES** Sony's Motion to Transfer.

**So ORDERED and SIGNED this 29th day of August, 2011.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

13